IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONNA MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-04-906-R |
| | ) | |
| JO ANNE BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Donna Miller seeks judicial review of the denial of benefits by the Social Security Administration ("SSA"). Because the SSA's decision is based on substantial evidence and the correct legal standard, the undersigned recommends affirmance of the SSA's decision.[1]

I.   BACKGROUND

On October 24, 1996, Ms. Miller applied for disability insurance benefits ("DIB")[2] based on an alleged disability beginning on July 1, 1993. Administrative Record at pp. 43-45 (certified Aug. 12, 2004) (Doc. 6) ("Rec."); *see also id.* at 503 (statement by the plaintiff's

---

[1]   The Court has referred the action to the undersigned for findings and recommendations on dispositive matters. Order Referring Matter to United States Magistrate Judge (July 27, 2004).

[2]   In her reply brief, Ms. Miller references "the Defendant's decision denying DIB and SSI benefits." Plaintiff's Reply Brief at p. 5 (Jan. 18, 2005) ("Plaintiff's Reply"). The reference to supplemental security income appears to be an error, as another attorney for Ms. Miller had previously acknowledged the absence of an application for these benefits. Rec. at p. 498.

counsel that the application was filed on October 24, 1996, with an alleged onset date of July 1, 1993).  The SSA denied the application initially and on reconsideration.  *Id.* at pp. 26-28, 31-33.  A United States administrative law judge applied the five-step process mandated under 20 C.F.R. § 404.1520(b)-(f) and rejected the Plaintiff's claim at step four.  *Id.* at pp. 12-20.  The Appeals Council declined jurisdiction,[3] but this Court reversed and remanded for further administrative proceedings.[4]

A second United States administrative law judge applied the five-step process mandated under 20 C.F.R. § 404.1520(b)-(f), and again rejected the Plaintiff's claim at step four.  *Id.* at pp. 266-69.  The Appeals Council assumed jurisdiction and remanded again.  *Id.* at pp. 307-309.

On remand, a third administrative law judge conducted a new hearing.  *See id.* at pp. 495-511.  The judge took no testimony at that time, but he continued the proceedings for 60 days.  *Id.* at p. 511.  Prior to a subsequent hearing, Ms. Miller's attorney wrote a letter to the administrative law judge and stated: "I have nothing further to offer on this claim . . . [and] request[] that a decision from your office be issued."  *Id.* at p. 335.

Without holding another evidentiary hearing, the judge issued his decision.  *Id.* at pp. 255-62.  Applying the five-step process mandated under 20 C.F.R.  § 404.1520(b)-(f), he rejected Ms. Miller's claim at step two.  *Id.* at pp. 260-62.

---

[3]      Rec. at pp. 4-5.

[4]      Rec. at pp. 275-76.

The Appeals Council declined jurisdiction,[5] and the present action followed.

II.    STANDARD OF REVIEW

The Court's review entails only a determination of whether the SSA's decision is based on substantial evidence and the correct legal standard. *See Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is greater than a scintilla and less than a preponderance. *See Sisco v. United States Department of Health & Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). This standard is met if a "reasonable mind" might accept the evidence "as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d at 760 (citation omitted). If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary. *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). However, the Court may not reweigh the evidence or substitute its judgment for that of the SSA. *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992).

III.    STEP TWO

At step two, the administrative law judge found that the Plaintiff did not suffer from a severe impairment as of September 30, 1995.[6] *See* Rec. at pp. 260-61. Ms. Miller contends: (1) The administrative law judge was bound by two previous findings that she had

---

[5]     Rec. at pp. 235-37.

[6]     The Plaintiff was insured for disability benefits through September 30, 1995. *See* Rec. at p. 333. To obtain disability benefits, Ms. Miller had to prove that she was disabled prior to the expiration of her insured status. *See* 20 C.F.R. § 404.131(a) (2003); *Henrie v. United States Department of Health and Human Services*, 13 F.3d 359, 360 (10th Cir. 1993).

suffered from a severe impairment, (2) the Appeals Council's remand order presupposed a finding of severity at step two, which foreclosed readjudication of this issue, and (3) the finding at step two was not supported by substantial evidence.  Plaintiff's Opening Brief at pp. 8-14 (Nov. 11, 2004); Plaintiff's Reply at pp. 1-5.  The Court should reject these arguments and affirm the SSA's decision.

A.      The Administrative Law Judge Was Entitled to Reassess the Findings at Step Two

Prior to the administrative decision at issue, Ms. Miller's claim had twice been denied at step four.  *See supra* pp. 1-2.  The Plaintiff suggests that: (1) the third administrative law judge was bound by the previous findings of a severe impairment at step two; and (2) by ordering a new assessment of the residual functional capacity ("RFC"), the Appeals Council had already resolved step two in the Plaintiff's favor, foreclosing further review.  Plaintiff's Opening Brief at pp. 10-14; Plaintiff's Reply at pp. 2, 4-5.  In response, the Defendant argues that the administrative law judge was free to reexamine the prior findings at step two.  Brief in Support of the Commissioner at p. 4 (Jan. 10, 2005).  The Defendant is correct.

The Tenth Circuit Court of Appeals addressed a similar issue in *Campbell v. Bowen*, 822 F.2d 1518 (10th Cir. 1987).  There the administrative law judge denied the application for benefits after concluding that the plaintiff could perform sedentary work.  *See Campbell v. Bowen*, 822 F.2d at 1520.  The Appeals Council remanded for additional findings regarding the transferability of the plaintiff's skills "within the claimant's residual functional capacity."  *Id.* at 1522.  On remand, the administrative law judge denied benefits after

4

concluding that the plaintiff had an RFC to perform light work.  *See id.*  On appeal, the Tenth

Circuit Court of Appeals concluded that: (1) the administrative law judge was not bound by

earlier administrative findings, and (2) the revised RFC determination was consistent with

the Appeals Council's remand order.  The court stated:

> The [administrative law judge's] redetermination of the [RFC] was not
> inconsistent with [the Appeals Council's] order.  Nor did the order bind the
> [administrative law judge] to his earlier decision.  To hold otherwise would
> discourage administrative law judges from reviewing the record on remand,
> checking initial findings of fact, and making corrections, if appropriate.  We
> decline to constrain the [administrative law judge] in a manner not mandated
> by the regulations.

*Id.*; *see Hamlin v. Barnhart*, 365 F.3d 1208, 1224 (10th Cir. 2004) (holding that following

a remand from the Appeals Council, the administrative law judge was not bound by a

previous RFC determination).

   *Campbell v. Bowen* compels rejection of the Plaintiff's claim.   The third

administrative law judge was not bound by previous administrative findings, and his decision

was consistent with the Appeals Council's order.  Because the second administrative law

judge proceeded to step four,[7] the Appeals Council had no reason to address his findings at

step two.  Instead, the Appeals Council ordered certain actions beginning at step three.  Rec.

at pp. 307-309.[8]  But this directive did not foreclose reconsideration of the findings at steps

---

[7]     *See supra* p. 2.

[8]     The Appeals Council instructed the administrative law judge to update the medical record,
prepare a new RFC assessment, hold a supplemental hearing, and reconsider the applicability of the
listings and the Plaintiff's testimony.  Rec. at pp. 307-309.

one and two.  Indeed, the *Campbell* court approved of the practice on remand of "reviewing the record . . ., checking initial findings of fact, and making corrections, if appropriate." *Campbell v. Bowen*, 822 F.2d at 1522; *see supra* p. 5.  The administrative law judge here simply rechecked the prior findings at step two and made a correction that he deemed necessary.  This correction was not inconsistent with the Appeals Council's order.

B.     The Administrative Law Judge's Decision at Step Two Was Supported by Substantial Evidence

The Court should also reject Ms. Miller's contention that the step two finding was unsupported by the evidence.

The step two standard "requires a 'de minimis' showing of impairment.  However, the claimant must show more than the mere presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  For example, the claimant must show that the condition has "significantly limit[ed] [her] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c) (2003).  The step two determination "is based on medical factors alone." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The relevant period for the inquiry is between: (1) July 1, 1993, at the earliest;[9] and (2) September 30,

---

[9]     As discussed above, Ms. Miller alleged a disability beginning on July 1, 1993; but she waited until October 24, 1996, to apply for DIB.  *See supra* pp. 1-2.  If Ms. Miller had been disabled, her benefits would ordinarily have begun in October 1995.  *See* 20 C.F.R. § 404.621(a) (2003); *see also* Social Security Ruling 83-20, *Titles II and XVI: Onset of Disability*, 1983 WL 31249, Westlaw op. at 1 (1983) ("In title II cases, [DIB] may be paid for as many as 12 months before the month an application is filed.").  By then, Ms. Miller's insurance coverage had already expired.  *See supra* note 6.  For present purposes, however, the Court can assume *arguendo* that the relevant time-period began on the alleged onset date, which was July 1, 1993.  The pertinent time-frame could not have begun any earlier.  *See* 20 C.F.R. § 404.320(b)(1) (2003).

1995, at the latest.[10]   For a DIB claim, the Plaintiff must prove the severity of her impairments prior to the date that she was last insured.  *See supra* note 6.

Ms. Miller suggests that a state agency doctor's report had compelled a finding of a "severe" mental impairment.  Plaintiff's Opening Brief at p. 13 ("Dr. Rasmussen's report also clearly shows that plaintiff has a 'severe' impairment, diagnosing major depression, recurrent, and anxiety disorder, and assessing various 'moderate' and 'marked' limitations." (citing Rec. at pp. 199-200, 202-204)).  The Plaintiff is incorrect.

As noted above, Ms. Miller had to prove the existence of a severe mental impairment between July 1, 1993, and September 30, 1995.  *See supra* pp. 6-7 & notes 6, 9-10.  The report by the agency physician, relied upon by the Plaintiff, involves a mental evaluation on August 24, 1998.  *See* Rec. at pp. 196-204.  At that time, the physician noted that the Plaintiff had suffered from a nervous breakdown in 1989, which culminated in hospitalization for 36 days.  *Id.* at p. 196;[11] *see id.* at pp. 98-99.  According to the doctor, the Plaintiff stated that after the hospitalization, she became pregnant, quit taking her medication, and failed to seek counseling.  *Id.* at p. 197.[12]  The report itself was based on an examination taking place over

---

[10]     As discussed above, the insurance coverage expired on September 30, 1995, and Ms. Miller had to prove the existence of a disability on or before this date.  *See supra* note 6.

[11]     At the end of this hospitalization, Joseph Hsu, M.D. diagnosed Ms. Miller with "[m]ajor depression, single episode with psychotic features."  Rec. at p. 99.

[12]     In the report, Dr. Rasmussen stated that Ms. Miller "has had sought counseling since" the hospitalization.  Rec. at p. 197.  This statement contains an apparent typographical error.  The context indicates that the physician meant to say that Ms. Miller had not sought counseling after the hospital stay.  *See id.*

7

two years and ten months after the end of the relevant time-period. *See supra* p. 7. The doctor referred to a nervous breakdown in 1989, but that was approximately four years before the beginning of the relevant time-period. *See supra* pp. 6-7. Thus, the evidence of mental impairments?.,m in 1989 and 1998 did not compel the finding of a severe impairment between July 1, 1993, and September 30, 1995.

The Plaintiff's counsel argued to the administrative law judge that Ms. Miller's mental condition had remained the same between 1989 and 1998. Rec. at p. 504 ("Our point is, and our argument will be obviously, we're trying to say Dr. Rasmussen's later report reflects back to the early report showing no change in medical condition."). But her attorney acknowledged "a gap from '89 up through the [date last insured] . . . ." *Id.* at p. 504. From the admitted gap, the administrative law judge could reasonably conclude that the mental impairments in 1989 and 1998 did not bear on the Plaintiff's mental condition between July 1, 1993, and September 30, 1995.

Indeed, the evidence from 1989 and 1998 suggested that they involved distinct episodes, rather than a continuous period of mental impairment. For example, when asked for her "current diagnostic impressions" as of August 1998, Dr. Rasmussen responded: "Major depression, recurrent, with possible psychotic features. Chronic pain syndrome with psychological factors and general medical condition. Anxiety disorder, primarily represented by social phobia at the current time."[13] *Id.* at pp. 199-200.[14]

---

[13]     A physician may retrospectively diagnose a disease which renders a claimant severely impaired. *See Potter v. Secretary of Health & Human Services*, 905 F.2d 1346, 1348 (10th Cir.

As discussed above, the agency doctor referred to an episode that required hospitalization in 1989. *See supra* p. 8. But the treating doctor noted in 1989 that the "psychiatric hospitalization[]" was the first one for Ms. Miller and that the diagnoses involved a "single episode" of major depression with psychiatric features. Rec. at pp. 98-99.

In the decision, the administrative law judge discussed Ms. Miller's 1989 hospital stay and Dr. Rasmussen's 1998 report. *Id.* at pp. 257, 260. The administrative law judge acknowledged that Dr. Rasmussen's evaluation had indicated the possibility of a "severe mental impairment" as of August 24, 1998. *Id.* at p. 261. But the judge pointed out that for disability benefits, Ms. Miller had to prove the existence of a disability on or before September 30, 1995. *Id.* at pp. 260-61; *see supra* note 6. The judge noted that following the 1989 hospitalization, "the . . . medical evidence of record . . . [did] not reflect further symptomology or diagnosis of mental impairment . . . until the diagnosis on August 24, 1998, by Dr. Rasmussen . . . ." Rec. at p. 257.

The Tenth Circuit Court of Appeals addressed a similar situation in *Webb v. Secretary of Health and Human Services*, 17 F.3d 1437, 1994 WL 50459 (10th Cir. Feb 22, 1994) (unpublished op.). There the administrative law judge had denied the plaintiff's DIB claim

---

1990) (*per curiam*). But Dr. Rasmussen's report did not contain a retrospective diagnosis, as she repeatedly noted that she was assessing Ms. Miller's "current" mental condition. *See* Rec. at pp. 197-200.

[14]    In an attached form, Dr. Rasmussen noted that Ms. Miller suffered at that time from "moderate" or "marked" limitations in her ability to relate to coworkers; use judgment; interact with supervisors; maintain her personal appearance and her concentration; understand, remember, and carry out detailed or complex job instructions; deal with the public and work stressors; and behave in a socially predictable and emotionally stable manner. Rec. at pp. 202-203.

at step two.  *See Webb v. Secretary of Health and Human Services*, 17 F.3d 1437, 1994 WL

50459, Westlaw op. at 1.  The plaintiff was last insured in March 1983.  *See id.*  Thus, the

plaintiff had to prove that he had a severe impairment prior to that date.  *See id.*  The medical

records revealed a hospitalization related to the alleged impairment in 1973.  *See id.*  The

only other information relating to the alleged impairment had involved a time after the

plaintiff was last insured.  *Id.*  Although the record included a retrospective diagnosis which

would have placed the impairment during the insured period, the court rejected the diagnosis

because it was not accompanied by objective findings.  *Id.*, Westlaw op. at 1-2.  Based on the

lack of evidence of an impairment during the relevant time-period, the Tenth Circuit Court

of Appeals concluded that substantial evidence had supported the administrative law judge's

step two determination.  *Id.*, Westlaw op. at 2.

 *Webb v. Secretary of Health and Human Services* is persuasive.  *See* Tenth Cir. R.

36.3(B).  Like the plaintiff in *Webb*, Ms. Miller presented evidence relating to her alleged

impairment that preceded and post-dated the relevant time-period.  *See supra* pp. 7-9.  But

like the plaintiff in *Webb*, Ms. Miller failed to establish a severe impairment during the

relevant period because she did not present any evidence of a continued mental impairment

from the episode in 1989.  Indeed, the only evidence of mental impairments involved an

episode preceding the alleged onset date by approximately four years and an evaluation taking place over two years and ten months after the insurance coverage had expired.[15] Under *Webb*, the administrative law judge could reasonably conclude that the condition on two days in 1989 and 1998 did not reflect a severe mental impairment during the period of July 1, 1993, to September 30, 1995.

The administrative law judge considered the record and had substantial evidence to conclude that there was no severe mental impairment during the relevant time-period.

IV.    THE PLAINTIFF'S OTHER ALLEGATIONS

Ms. Miller also alleges a failure to comply with the Appeals Council's remand order, which instructed the administrative law judge to: (1) obtain updated testimony from a medical expert, (2) evaluate testimony of prior medical experts, and (3) obtain updated vocational testimony.  Plaintiff's Opening Brief at pp. 1, 9-11, 14; Plaintiff's Reply Brief at pp. 1-5.  But these instructions pertain to steps three, four, and five of the sequential evaluation, which the administrative law judge did not need to reach in light of his reassessment at step two.  *See supra* pp. 3-11.  Accordingly, the administrative law judge's reassessment was consistent with the Appeals Counsel's remand order.

V.    RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

The Court should affirm the decision of the SSA.

---

[15]    The record does include a 1996 progress note from the Good Shepherd Medical Center.  This note states: "prob panic disorder."  Rec. at p. 150.  But this reference also involves a diagnosis made after Ms. Miller's insurance had expired.

Any party may file written objections with the Clerk of the United States District Court. *See* 28 U.S.C. § 636(b)(1) (2000). The deadline for objections is March 15, 2005. *See* W.D. Okla. LCvR 72.1(a). The failure to file timely objections would result in waiver of the right to appeal the suggested ruling. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

VI.     STATUS OF THE REFERRAL

The referral to the undersigned is terminated.

Entered this 23rd day of February, 2005.


Robert E. Bacharach
United States Magistrate Judge